Noel Cordero Crespo, recurrente, v. El Registrador de la Propiedad de Arecibo, recurrido.

Número: G-62-3      Resuelto: 27 de junio de 1963

*Efraín Ramírez Ramírez,* abogado del recurrente; El Registrador
   compareció por escrito.

Sala integrada por el Juez Asociado Señor Belaval como Presi-
   dente de Sala y los Jueces Asociados Señores Hernández
   Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El 9 de mayo de 1961, doña Rosa Crespo Hernández,
casada con el señor Pedro Cordero Jiménez, a la fecha de la
adjudicación un demente, otorgó una escritura de adjudica-
ción en pago a favor de su hijo, el recurrente Noel Cordero
Crespo, exponiendo entre los antecedentes escriturarios, haber
adquirido en unión de su esposo don Pedro Cordero Jiménez,
desde hacía bastantes años, una casa de dos plantas, a ex-

tramuros de la calle Nueva, en el Barrio de San Felipe de Arecibo, y habiendo quedado incapacitado su esposo no les fue posible hacer las reparaciones correspondientes a dicha casa, llegando la misma a estar en ruinas, por lo cual el otro compareciente su hijo, el señor Noel Cordero Crespo, se vió en la obligación de reconstruir dicha casa, destruyendo casi en su totalidad su anterior estructura y reconstruyéndola a un costo de nueve mil dólares; que no siéndole posible a la compareciente satisfacer dicha inversión, por la escritura número 43 de adjudicación en pago de 9 de mayo de 1961 ante el Notario don Efraín Ramírez Ramírez, doña Rosa Crespo Hernández cedió en pago todos sus derechos y acciones a don Noel Cordero Crespo en el solar y la casa reedificada por la suma de cuatro mil quinientos dólares.

Presentada dicha escritura para su inscripción, el señor Registrador de la Propiedad de Arecibo la denegó por el fundamento, que tratándose de un bien ganancial, no había presentado el consentimiento para la dación en pago su esposo don Pedro Cordero Jiménez. El señor Registrador tomó razón de la prohibición del Art, 91 del Código Civil de Puerto Rico (1930) que dispone: "Los bienes inmuebles de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento expreso de ambos cónyuges."

Posteriormente, una hija de la señora Rosa Crespo Hernández y don Pedro Cordero Jiménez, la señora Cricelia Cordero Crespo acudió ante el Tribunal Superior de Puerto Rico, Sala de Arecibo alegando que su padre don Pedro Cordero Jiménez se encontraba padeciendo de demencia, su madre doña Rosa Crespo Hernández padeciendo de una enfermedad crónica que le impedía hacer gestiones fuera de su hogar y resultando su hermano Noel Cordero Crespo acreedor de sus padres por la reconstrucción de una casa propiedad de la sociedad conyugal, dicho don Pedro Cordero Jiménez no tenía persona alguna que lo representara y que a falta de miembro

de la familia más cercano, la declaración de incapacidad y la tutela le correspondía a uno de sus herederos abintestato, como resultaba ser, la peticionaria señora Cricelia Cordero Crespo, de acuerdo con el Art. 181 del Código Civil de Puerto Rico (1930).

Celebrada la vista correspondiente, con asistencia del Ministerio Público, la ilustrada Sala sentenciadora dio por acreditado todo lo antes alegado mediante la declaración de un perito médico sobre la condición física del señor Pedro Cordero Jiménez y la declaración de otros testigos, y siendo favorable el dictamen del Ministerio Fiscal, procedió a declarar a dicho señor Pedro Cordero Jiménez incapaz para administrar sus bienes y nombró a la peticionaria señora Cricelia Cordero Crespo, tutora legal de dicho señor, autorizándola a su vez a ceder y traspasar en pago de deuda al señor Noel Cordero Crespo la participación de don Pedro Cordero Jiménez en la propiedad antes descrita.

En virtud de dicha facultad, doña Cricelia Cordero Crespo, a nombre de su padre, otorgó la escritura ochenta y ocho de 11 de septiembre de 1961 ante el Notario don Efraín Ramírez Ramírez a favor de don Noel Cordero Crespo cediéndole en pago de la reconstrucción de la casa de que ya hemos hablado todos los derechos y acciones que pudiera tener don Pedro Cordero Crespo por la suma de cuatro mil quinientos dólares.

Presentadas ambas escrituras al Registro con una copia certificada de la resolución del Tribunal Superior de Puerto Rico de 14 de agosto de 1961 antes mencionada, el señor Registrador denegó la inscripción a favor de don Noel Cordero Crespo por los siguientes fundamentos: 1° "Porque el acto efectuado por la transmitente Rosa Crespo Hernández constituye una enajenación de sus derechos y acciones en esta finca sin que preste el consentimiento su esposo Pedro Cordero Jiménez como lo exige la ley para realizar el contrato por tratarse de un bien ganancial;" 2° "porque la enajenación verificada por la tutora mediante la relacionada escritura

número ochenta y ocho sobre la cesión de derechos y acciones que le pertenecen en la finca al incapaz Pedro Cordero Jiménez es nula porque ejercita la tutela del incapaz su hija Cricelia Cordero Crespo cuando por ley debe ejercerla la esposa de aquél"; 3° "porque no aparece inscrita la tutela en el libro correspondiente como lo exige la ley;" 4° "porque la resolución antes relacionada no es suficientemente explícita a nuestro entender para autorizar la transferencia a nombre del cónyuge incapacitado de sus derechos sobre esta finca puesto que en dicha resolución no se expresa cómo, cuándo ni en qué forma, ni con qué autorización fue invertida la suma relacionada de nueve mil dólares con cargo a los cónyuges;" 5° "porque la resolución se dictó sin jurisdicción ya que de la faz de la misma no se desprende que haya sido notificado el incapacitado de que se seguía contra él acción de incapacidad, ni se le dió oportunidad para defenderse, por lo que no podría válidamente someterse a tutela;" 6° "porque no se evaluó por peritos o en forma otra legal el valor de la reconstrucción ni se determinó si efectivamente se hizo la inversión pretendida exclusivamente en dicha reconstrucción;" 7° "porque ante estos hechos y otras circunstancias que surgen de la faz de los documentos resulta patente a nuestro entender la nulidad de la escritura de adjudicación en pago otorgada por dicha tutora, y por lo tanto la misma es ineficaz en derecho para convalidar la escritura número cuarentitrés que motiva este asiento, ni ésta convalida aquélla."

De las objeciones sólo le pertenecen a la competencia del Registrador recurrido las enumeradas bajo los apartados 1°, 2° y 5°; las otras forman parte de una declaración judicial o están cubiertas por la presunción de la regularidad de los procedimientos.

Es cierto que cualquier enajenación de bienes inmuebles pertenecientes a la sociedad conyugal necesita del concurso de ambos cónyuges, y de acuerdo con el Art. 91 relacionado con el Art. 1313 del Código Civil de Puerto Rico (1930)

—31 L.P.R.A. secs. 284 y 3672—se considera nula cualquier enajenación de bienes inmuebles realizada sin el consentimiento expreso de ambos cónyuges. Pero esta disposición se refiere al caso corriente en que ambas partes tengan la capacidad legal necesaria para enajenar los bienes de la sociedad conyugal. Además habiendo restringido la ley la declaración de nulidad en favor del cónyuge o sus herederos, la enajenación individual resulta ratificable por la otra parte, y de esta forma, lo declarado nulo pasa a ser meramente anulable. La glosa hipotecaria admite que siendo ratificable es inscribible:

"Por otra parte, no hay que fiarse mucho de lo que el Código civil califica de nulo, porque no siempre es el Registrador el llamado a apreciar la nulidad, ni siempre se presenta enteramente clara la cuestión. La falta de licencia del marido en los actos otorgados por mujer casada, hace estos actos nulos, según el Código. Sin embargo, sólo el marido o sus herederos pueden reclamar la nulidad; por lo cual, la Dirección, después de una jurisprudencia vacilante, declaró en 22 de Agosto de 1894 que esa falta no impide la inscripción. Nulas son las donaciones en que falta la aceptación del donatario, y sin embargo, sólo procede la suspensión hasta que se acredite ese hecho. Nula es la donación inoficiosa y la de todos los bienes, pero el Registrador ha de inscribirla, porque se reputa válida hasta que recaiga resolución judicial a instancia de los únicos interesados, según los Arts. 654 y 655 del Código, en relación con los 634 y 636, como declara la Resolución de 21 de Agosto de 1893. En el caso del Art. 1.057 del mismo, deben citarse para la formación del inventario a los acreedores; pero aunque no se citen, el acto es eficaz si después prestan su conformidad; por lo que debe calificarse el defecto de subsanable.

"Influye además mucho en la apreciación de las faltas el criterio de cada Registrador, desde aquel que sólo ve en todo defectos y suspende la inscripción sin fundamento serio

por miedo a incurrir en responsabilidad, hasta el que no ve las faltas, no les concede la importancia que merecen. La materia es, por otra parte, difícil: hay en las faltas grados muy diversos; no es fácil marcar una línea clara de separación entre las faltas insubsanables, las subsanables y las que no estorban la inscripción, y pueden tomarse al apreciarlas distintos caminos, o partir de diversos principios que, naturalmente, no siempre llevan el mismo fin.

"Sirva de ejemplo la falta de licencia marital a que antes hemos aludido. La mujer vende sin licencia de su marido, el acto es nulo con arreglo al Código, y la Dirección general empieza afirmando que se trata de un defecto insubsanable, porque no hay capacidad. Después, se observa que el marido puede ratificar el acto, y por tanto que el defecto puede subsanarse fácilmente. Y más tarde, estimando que no se trata de un contrato necesariamente nulo, y que sólo el marido o sus herederos pueden reclamar contra él, se declara que procede inscribir." 3 Morell, *Legislación Hipotecaria*, págs. 255–256.

■ En el caso que nos ocupa la enajenación resulta ratificable, y después de suplida la capacidad de un esposo demente es a su tutora a quien corresponde el acto de ratificación.

■ El señor Registrador tiene razón al afirmar que cuando el marido se incapacita es a su esposa a quien le corresponde la tutela. Scaevola explica que la razón de esta preferencia está en el complejo de intereses que produce la sociedad de gananciales:

"Téngase en cuenta de otro lado que existe además una razón potísima para defender que el cónyuge capaz, varón o mujer, mayor o menor de edad, es el que debe representar al incapaz. La razón a que aludimos es la de que subsiste la indivisión de los bienes matrimoniales, porque la locura no se puede reputar justa causa para pedir la separación de los bienes de los cónyuges, medida ésta trascendental que sólo procede cuando el cónyuge del que la pidiere hubiese sido con-

denado a la pena de interdicción civil, declarado ausente o dado causa al divorcio (art. 1.433). En el caso de locura, como producida después del matrimonio, éste continúa y los bienes conservan su propia condición de conyugales. Permaneciendo indivisos, se impone en derecho que sea el cónyuge capaz el que los administre; y como la administración de los bienes y el cuidado personal mantienen, por lo que la tutela se refiere, tan íntima conexión, evidénciase que la persona que provea al cuidado del incapaz debe ser asimismo la administradora de su patrimonio. Bajo cualquier aspecto que se estudie el punto discutido, viénese a parar a la conclusión de que la mera cualidad de cónyuge es de por sí suficiente para adquirir, ipso facto, la tutela del otro cónyuge incapacitado por locura." 4 Scaevola—*Código Civil*, págs. 394–395 (edición Reus 1942).

Pero en el caso presente hay constancia que la cónyuge hábil no pudo hacerse cargo de la tutela por su estado de salud, y esa razón debe ser suficiente para el señor Registrador, puesto que la substitución es asunto sujeto a adjudicación judicial. Casualmente, la glosa más moderna empieza a destacar la conveniencia de atender más a la habilidad del tutor que al orden estatuido: IV Borrell y Soler—*Derecho Civil Español* 239 (edición Bosch 1954); II-II Puig Peña, *Tratado de Derecho Civil Español* 332 (edición Revista de Derecho Privado).

Si bien es verdad que hay que notificar al incapacitado de la acción de incapacitación que se sigue contra él— requisito que se origina en las autorizaciones relativas a menores del anterior Consejo de Familia, hoy desplazado por una total intervención judicial en todo lo referente a incapacitaciones—habiendo concurrido en el caso de este demente el señor Fiscal del Tribunal Superior de Puerto Rico, Sala de Arecibo, a la vista del expediente y habiéndose producido testimonio médico en cuanto a la causa física de la incapacidad, la presencia del demente durante la vista, no hubiera

añadido ninguna garantía adicional al procedimiento de autorización, vistas las circunstancias especiales de este caso, en que todas las partes presumiblemente perjudicadas tienen conocimiento de la autorización que se solicita. De todos modos, es al Juez a quien le corresponde, en vista de la variedad de las situaciones jurídicas de la tutela, determinar en qué casos es necesaria la notificación al incapacitado. El discernimiento judicial sobre este particular debe ser suficiente para el Registrador de la Propiedad.

■ Tal vez sea conveniente aclarar que en las autorizaciones para enajenar bienes de un cónyuge incapacitado, son distintas a las autorizaciones para enajenar bienes de menores: *Roselló* v. *Registrador*, 42 D.P.R. 508 (Aldrey) (1931), cita precisa a las págs. 510–511.

*Se revocará la nota denegando la inscripción y se ordenará las inscripciones solicitadas.*