CARLOS HUGO IRIZARRY, demandante y recurrente, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada y recurrida.

*Número:* R-62-135        *Resuelto:* 29 de marzo de 1966

*Fiddler, González & Rodríguez, María Luisa Fuster* y *Federico Tilén,* abogados del recurrente; *José Antonio Arabía* y *Carlos M. Díaz Lamoutte,* abogados de la recurrida.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Blanco Lugo y Ramírez Bages.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

Al concluir la presentación de la prueba del demandante recurrente Carlos Hugo Irizarry en una acción en reclamación de los daños sufridos con motivo de la electrocución de cierto ganado vacuno, la demandada Autoridad de las Fuentes Fluviales solicitó la desestimación de la demanda conforme a las disposiciones de la Regla 39.2 de las de Procedimiento Civil de 1958.([1]) El tribunal de instancia accedió a lo solici-

---

([1]) En la parte pertinente la Regla 39.2 lee como sigue:

". . . Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos y la ley el demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. Si dictare sentencia sobre los méritos contra el demandante, el tribunal hará determinaciones de hechos según lo dispone la Regla 43.1 . . . ."

tado y dictó una sentencia que copiada a la letra lee como sigue:

"Carlos Hugo Irizarry es dueño de una vaquería en el barrio Candelaria de Toa Baja y el día 17 de octubre de 1950 murieron ocho vacas que estaban en su establo.

"La Autoridad de Fuentes Fluviales suministraba la energía eléctrica al establo y residencia del demandante.

"Se alega que la causa de la muerte de esas ocho vacas se debió a una instalación defectuosa en el servicio eléctrico y a la culpa y negligencia de la demandada.

"La prueba de la parte demandada [*sic*] no ha establecido.

"(1)  La causa de la muerte.

"(2)  Negligencia o culpa de la demandada.

"La parte demandante tiene el peso de la prueba de sus alegaciones. La prueba en cuanto a la causa de la muerte es una creencia o inferencia de un testigo sin poder explicarla. Es decir cree que las vacas murieron por electrocusión [*sic*] pero no puede explicar cómo llegó la corriente hasta las vacas para producirle la muerte.

"Por otro lado, aún aceptando que las vacas murieron electrocutadas, no hay prueba alguna de negligencia de la demandada. La instalación eléctrica pertenece al demandante y su cuidado y conservación le corresponde. El alambre de tierra (*ground*) faltaba en la caja de seguridad del demandante, dentro de la edificación, pero la falta de ese cable por sí solo no hacía que la corriente pasara de la instalación, por tubería, a las horcatas [*sic*] que sostenían a las vacas.

"La prueba de la parte demandante no nos permite concluir que las vacas murieron electrocutadas, ni que hubo culpa o negligencia de la demandada al suplir el servicio de electricidad al demandante. Si el 'safety switch' estaba defectuoso, era al demandante a quien le correspondía tenerlo en buenas condiciones. Pero aún sobre este extremo la prueba es contradictoria. El electricista lo encontró en buenas condiciones de uso y lo único que hizo fue instalar el cable a tierra.

"Se declara con lugar la moción de 'non suit' y sin lugar la demanda con costas al demandante."

Decidimos revisar esta sentencia.

En el presente recurso los errores señalados se dirigen a impugnar la conclusión del tribunal de instancia sobre la

ausencia de responsabilidad de la demandada. En la demanda original se alegó que la electrocución de los animales se debió a una intalación defectuosa en el servicio eléctrico y a un defecto en el contador instalado por la demandada; después de practicada la prueba, el demandante descansó en que la Autoridad de las Fuentes Fluviales incumplió su deber e incurrió en negligencia al darle su aprobación a una instalación defectuosa y en suministrarle electricidad al establo con una instalación defectuosa. Ello obedece sin duda a que se estableció que el accidente ocurrió en un lugar en que el demandante era responsable por la instalación existente. Igualmente se oponen reparos al criterio que siguió el tribunal a quo para resolver la moción de desestimación y se insiste en que, de acuerdo con la tradicional norma de la *scintilla* de evidencia, existía suficiente base en el récord para establecer un caso prima facie y requerir al demandado que procediera a presentar su prueba.

▪ 1. Bajo la anterior Regla 41(b) de Enjuiciamiento Civil de 1943, idéntica a la Regla federal 41(b) original, la norma de impugnación de la suficiencia de la prueba al concluir la prueba de la parte actora, aparece expuesta en *Mariani* v. *Christy*, 73 D.P.R. 782, 795 (1952), en las siguientes palabras: "Una moción de nonsuit admite toda la evidencia aducida por el demandante en su parte más favorable a este último y debe ser declarada sin lugar de haber tan sólo una *scintilla* de evidencia para sostener una causa de acción y debe ser declarada sin lugar cuando esa prueba presenta un caso prima facie . . ." Véanse además, *Castro* v. *Payco, Inc.*, 75 D.P.R. 63 (1953); *José Malgor & Cía.* v. *B. Silva, Sucrs.*, 70 D.P.R. 803 (1950); *Pagán* v. *Santiago*, 69 D.P.R. 145 (1948). Más, la Regla 39.2 de 1958, transcrita precedentemente en la parte pertinente, correspondiente a la vigente Regla federal 41(b), según fuera enmendada en 1946, introdujo un importante cambio a este respecto pues expresamente autoriza al tribunal a "determinar los hechos"

y dictar sentencia contra el demandante, si ello fuere procedente. Los tribunales federales han interpretado que el alcance de esta disposición es autorizar al juez en esta etapa de los procedimientos a aquilatar la prueba presentada por la parte demandante y a formular su apreciación de los hechos según la credibilidad que la haya merecido la evidencia presentada. Véanse, *United States* v. *General Dynamics Corporation*, 246 F.Supp. 156, 159 (1965); [2] *O'Brien* v. *Westinghouse Electric Corporation*, 293 F.2d 1, 9 (3d Cir. 1961); Barron y Holtzoff, *Federal Practice and Procedure*, vol. 2B sec. 919, págs. 146–153; Moore, *Federal Practice* (2a ed.) vol. 5 sec. 41.13 [4], págs. 1155 y ss.; 9 F. Rules Serv.; 986–992; Notas, 42 Ill. L. Rev. 228 (1947); 45 Mich. L. Rev. 788 (1947). Véase, contra, Steffen, *The Prima Facie Case in Non-Jury Trials*, 27 U. Chi. L. Rev. 94 (1959). Moore, *op. cit.* explica que la enmienda de 1946 a la Regla federal 41 (b) respondió al propósito de resolver el conflicto surgido entre distintas cortes de apelación respecto al alcance de las facultades del juez en la consideración de una moción de *nonsuit*. Señala que la función de éste como juez de los hechos es distinta a la del jurado en casos que se ventilan ante jurado, y por tanto,

---

[2] En *United States* v. *General Dynamics Corporation*, supra, a la pág. 159, se expone la regla en las siguientes palabras:

"La moción presentada por la parte demandada conforme a la Regla 41 (b) corresponde procesalmente a la moción para que se dicte un veredicto determinado en un pleito ante jurado. [Citas.] Aunque se dirigen a lograr el mismo resultado, las normas para su resolución son significativamente diferentes. En un pleito por jurado, ante una moción para que se dicte un veredicto, el tribunal debe considerar la evidencia en la forma más favorable a la parte demandante y derivar todas las inferencias que le favorezcan. La moción puede solamente ser declarada con lugar si la evidencia es insuficiente, como cuestión de derecho, para conceder un remedio a la parte demandante. [Cita.] En un pleito visto ante el juez sin la concurrencia de un jurado, el tribunal aquilata la evidencia y considera el derecho aplicable. Pero en esta situación, la moción puede ser declarada con lugar aunque la parte demandante haya establecido un caso prima facie. [Cita.] El tribunal debe examinar la prueba con un enfoque objetivo, . . . . La evidencia debe ser pesada y apreciada, concediéndosele el peso que el juez estime apropiado. [Cita.]"

puede pasar sobre conflictos de evidencia y credibilidad, y si evalúa el testimonio y declara con lugar la moción, es procedente la formulación de determinaciones de hecho y conclusiones de derecho.

■ Siendo el despacho rápido de los casos uno de los propósitos cardinales de las reglas de procedimiento, y considerada la situación de congestión en los calendarios civiles de los tribunales de primera instancia, adoptamos la interpretación federal. Muy poco se ganaría con exigir invariablemente la presentación de la prueba de la parte demandada cuando el juez está convencido que el demandante no puede prevalecer. Es oportuno apuntar que esta facultad debe ejercitarse después de un escrutinio sereno y cuidadoso de la prueba, y que, en caso de duda, es preferible requerir al demandado para que presente su caso.

■ Retornando a los hechos del caso de autos, de la sentencia se desprende que el tribunal a quo, al apreciar la prueba de la parte demandante, estimó que no se había presentado una explicación de la forma en que se trasmitió la corriente eléctrica a los horcates a los cuales estaban amarradas las vacas. Ello es explicable en vista de que la versión del perito sobre la existencia de "algún punto de conexión" entre la instalación eléctrica y las tuberías de agua y aire se deriva de una inferencia sobre la cual los autos están huérfanos de prueba. Por otro lado, la ausencia de determinación al efecto, tiende a indicar que no mereció crédito aquella parte de su testimonio sobre la falta de un bajante a tierra en el contador. Y aunque ése hubiese sido el caso, como se señala en cuanto a la caja de seguridad o interruptor del flujo de corriente, la falta de dicho cable no significaba que la corriente se trasmitiera de la instalación a los horcates, a través de la tubería. En resumen, la parte demandante falló en establecer el nexo causal que daría margen a la responsabilidad de la recurrida.

■ 2. Ahora bien, aun cuando prevaleciera la norma de que la mera existencia de una *scintilla* de evidencia impide la

desestimación, tampoco el demandante recurrente tendría éxito. Apreciada en la forma más favorable a éste, y según lo puntualiza en su petición y en el alegato presentado, el único acto de supuesta negligencia de la demandada residiría en su aprobación en 1950 de la instalación eléctrica hecha por el demandante siendo ésta defectuosa por carecer de un bajante de tierra. Aun así, faltaría el elemento de causalidad indispensable para la imposición de responsabilidad. Es de estricta aplicación lo expresado en el escolio 6 de la opinión emitida en *Rodríguez* v. *Aponte*, 78 D.P.R. 756, 766 (1955), en donde considerando una situación similar, se dijo:

"Tampoco puede presumirse negligencia causante de la muerte, por parte de la Autoridad, por el hecho de que ésta aprobara la instalación como lo hizo, entre otras razones, porque habiéndose demostrado que cuando empezó a suplir energía eléctrica la instalación estaba en condiciones de recibirla, sin que se probara que en ningún momento antes de ocurrir el accidente tuviera conocimiento la Autoridad de defecto alguno en dicha instalación que hiciera inseguro continuar supliendo dicha energía, no hay base alguna para presunción de tal naturaleza."

En el presente caso la instalación se hizo en 1950 y el siniestro ocurrió ocho años después. La instalación fue suficiente para recibir la corriente durante ese largo período de tiempo y la prueba no revela que en momento alguno se le notificara a la Autoridad de defecto alguno que creara una situación de peligro. Lo que sí demuestra es que la instalación se cargó por el demandante con aparatos eléctricos adicionales, a los cuales tampoco se les suplió el bajante a tierra necesario. ([3])

---

([3]) El reglamento correspondiente dispone:

22 R.&R.P.R. 196–12(2)—". . . El abonado pagará el costo de la línea que conecte su instalación a dicho equipo protector *y será responsable de la conservación* de tales facilidades." (Énfasis nuestro.)

22 R.&R.P.R. 196–16(b)—"Todas las líneas y equipo del abonado deberán ajustarse a los requisitos modernos, como lo exige el Código Nacional Eléctrico de Seguridad, el Código Eléctrico Nacional y las reglas y reglamentos tanto estaduales como municipales que sean aplicables."

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 24 de abril de 1962.([4])*

22 R.&R.P.R. 196–17—"La Autoridad tendrá el derecho, pero no la obligación de inspeccionar en cualquier momento las instalaciones eléctricas y se reserva también el derecho de rechazar cualquier instalación o equipo que no encuentre conforme con los reglamentos establecidos, pero el hecho de efectuar o no tal inspección, *o el rechazar o no la instalación, no hará responsable a la Autoridad ni a sus agentes,* ni a sus empleados, de cualquier pérdida, daño o accidente que resulte *por defectos en la instalación del abonado* o en cualquier otro equipo eléctrico, o a causa de la violación de la 'solicitud de servicio' o del contrato, de los cuales es parte esta Subdivisión." (Énfasis nuestro.)

22 R.&R.P.R. 196–23—"El abonado será responsable del cuidado y uso de la energía eléctrica desde el punto de entrega en adelante y no deberá usar dicha energía eléctrica para ningún otro propósito ni en ningún otro lugar que no esté especificado en la tarifa aplicable."

([4]) En vista del resultado a que hemos llegado no es necesario resolver la moción de desestimación presentada por la parte recurrida.