CARMEN MARÍA TORRES, ETC., ET AL., demandantes y recurrentes, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada y recurrida.

*Números:* R-67-312,        *Resueltos:* 24 de octubre de 1968
R-67-358

---

*Héctor Lugo Bougal, Delia M. Auffant* y *Delia Lugo Bougal,* abogados de las recurrentes; *Luis A. Lugo, Jr.,* abogado de la recurrida.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Torres Rigual.

El Juez Asociado Señor Hernández Matos emitió la opinión del Tribunal.

Carmen María Torres e Iluminado Torres se casaron el 20 de octubre de 1955. De ese matrimonio nacieron dos hijos, Jaime Luis y Carmen María. Después de contraer matrimonio y a la fecha en que ocurrieron los hechos que dieron lugar a este recurso, Iluminado Torres padecía de sus facultades mentales. Para el 16 de enero de 1965 residían en un barrio de Peñuelas y en una casa de ellos construida en el patio de la residencia de Facunda Torres, abuela de Carmen María Torres. Dicha propiedad era un bien ganancial. En ese día ocurrió un fuego en la casa de doña Facunda Torres, el cual se extendió a la casa de los esposos Torres, quedando ésta totalmente destruida. El 18 de marzo de 1966 Carmen María Torres solicitó y obtuvo del Tribunal Superior, Sala de Ponce, nombramiento de defensora judicial de su esposo incapacitado y de sus hijos menores. En la misma fecha, en su capacidad de defensora judicial de su esposo e hijos, radicó una demanda contra la Autoridad de las Fuentes Fluviales reclamando daños y perjuicios por las pérdidas sufridas a consecuencia del fuego.

Sobre la primera causa de acción, instituida a favor de la sociedad ganancial, se dictó sentencia el 14 de setiembre de 1967 desestimándola a base de la prescripción de un año. Este fallo motivó el recurso R-67-312.

Fue a juicio el caso respecto a la segunda causa de acción, reclamando los daños sufridos por los hijos menores del matrimonio. Después de presentada la prueba de los demandantes, el tribunal a solicitud del demandado, también la desestimó, por sentencia de 13 de octubre de 1967, fundándose en que la parte demandante no demostró la existencia de un nexo causal entre el daño y la acción u omisión de la demandada. Este segundo fallo motivó el recurso R-67-358.

De ambos fallos recurren los demandantes, y los recursos han sido consolidados para resolverse conjuntamente.

### *Fallo sobre la Primera Causa de Acción*
### *Recurso R-67-312*

En la demanda se alegó, y de la contestación a los interrogatorios sometidos por la demandada surge, que Iluminado Torres estaba mentalmente incapacitado desde 1959, aunque nunca había sido declarado tal por tribunal alguno. No hay controversia en cuanto a que los daños a que se refiere esta causa de acción fueron sufridos por la sociedad de gananciales compuesta por los esposos Torres.

La controversia gira alrededor de si en este caso es de aplicación el Art. 40 del Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 254), alegando la demandada-recurrida que el citado Art. 40 no es de aplicación porque la sociedad de gananciales es en nuestra jurisdicción una entidad separada de los cónyuges que la integran, refiriéndose dicho Art. 40 a personas naturales y no a jurídicas. Aducen además que cuando se incapacita el marido, nuestra ley transfiere automáticamente a la mujer la administración de los bienes del matrimonio, y, por lo tanto, al no iniciar la esposa la acción dentro del año de haber ocurrido los hechos, la misma estaba prescrita.

En primer lugar debemos establecer si el citado Art. 40 protege a una persona incapacitada mentalmente, aunque no haya una previa declaración judicial sobre su incapacidad.

Ya hemos considerado el caso de menores y decidido que para un menor de edad no comienza a correr el término prescriptivo fijado para ejercer su acción mientras dure su incapacidad, o sea hasta que llegue a la mayoridad. *Márquez* v. *Tribunal Superior*, 85 D.P.R. 559 (1962). En cuanto a los incapaces mentales, en la mayoría de las jurisdicciones en que se ha planteado el problema, con estatutos similares al nuestro, se ha resuelto que no es necesario que la persona

haya sido declarada incapaz en un procedimiento judicial para que la prescripción no corra contra ella. (¹) 34 Am. Jur. § 202, pág. 162; *Browne* v. *Smith*, 205 P.2d 239 (1949); *Hammer* v. *Rosen*, 165 N.E.2d 756 (1960); *Gomillion* v. *State*, 274 N.Y.S.2d 381 (1966). Sin embargo, en la vista del caso en que a nombre del demente se alegue su incapacidad para evitar que la prescripción opere contra él, se deberá demostrar que tal incapacidad era de tal naturaleza que no le permitía la administración de sus bienes, o comprender el alcance de sus derechos y obligaciones. *Proof of Unadjudged Incompetency which Prevents Running of Statute of Limitations*, 9 A.L.R.2d 964; *Kyle* v. *Green Acres at Verona Inc.*, 207 A.2d 513 (1965); *Browne* v. *Smith*, supra. Recae el peso de la prueba sobre quien alega la incapacidad, si la otra parte la negare. *Bowman* v. *Lemon*, 154 N.E. 317 (1926); *In re Estate of Christman* v. *Christman*, 136 N.E.2d 80 (1955); *Carter* v. *City of Wooster*, 155 N.E.2d 533 (1958).

■ Tampoco tiene razón la recurrida en su planteamiento en el sentido de que el Art. 40 no es de aplicación al caso de autos debido a que la sociedad de gananciales es una entidad separada de los cónyuges que la integran, refiriéndose dicho Art. 40 a personas naturales y no a personas jurídicas. Veamos.

■ Nadie niega que la sociedad conyugal tenga personalidad jurídica, ya que posee los requisitos necesarios para tener propia personalidad: existencia de un interés común,

---

(¹) Aun en el supuesto de que se le hubiere nombrado tutor al presunto incapaz, la prescripción no corre contra él hasta tanto no haya advenido a su completa capacidad. *Appointment of Guardian for Incompetent or for Infant as Affecting Running of Statute of Limitations Against Ward*, 86 A.L.R.2d 965. *Gottesman* v. *Simon*, 337 P.2d 906 (1959); *Whalen* v. *Certain-Teed Products Corp.*, 134 S.E.2d 528 (1963); *Márquez* v. *Tribunal Superior*, supra.

En cuanto a cuándo debe haber surgido la incapacidad mental para que ésta surta el efecto de suspender el término prescriptivo de la acción, véase 41 A.L.R.2d 726.

conciencia del mismo y organización de la colectividad. Pero es una entidad económica familiar, *sui generis*, de características especiales, que no tiene el mismo grado de personalidad jurídica de las sociedades ordinarias o entidades corporativas, sino, como dice Alfonso de Cossio y Corral, en su obra *La Sociedad de Gananciales*, Madrid, 1963, pág. 23, citando a Carbonier, "otro menor adaptado a su razón de ser y a la interpenetración entre los patrimonios personales y el social que hay en ella; una personalidad atenuada . . . siendo el marido el órgano del interés común."

Es una sociedad legal y necesaria, contraída con el fin de mantener y ayudar a sufrir las cargas del matrimonio, no formada con una idea de especulación, sino fortalecida por el cariño de los cónyuges y que une a éstos para cumplir mejor las cargas y atenciones de su estado con las ganancias obtenidas constante matrimonio. Sin embargo, los derechos en ella son desiguales en lo que respecta a la representación legal, dirección, administración y disposición de bienes de la sociedad, puesto que el legislador las concedió, en primer término al marido, aunque con sujeción a prudentes limitaciones.

■ Si por imperio de Ley, la facultad de representación para el ejercicio de esas acciones judiciales reside, ordinariamente, en la persona del marido, y si todo lo referente al desarrollo, régimen y mantenimiento de la comunidad familiar concierne tan de cerca al orden público, no concebimos una buena razón para negar la protección del citado Art. 40 a la sociedad conyugal en casos en que se incapacite el consorte a quien corresponda iniciar la correspondiente acción. Este precepto tiene por supuesto la expresión condicionada de "si la persona con derecho *a ejercitar* una acción . . ." que, cuando se trata de la sociedad ganancial, no puede ser otra que no sea el marido, o, en su caso, la mujer. No se refiera a "la persona que por ley *tenga el derecho que se reclama*" como se expresa en la Regla 15.1 de Procedimiento

Civil. Sería aún más injusto que se permitiera correr el término prescriptivo en el caso en que tanto el marido como la mujer se incapacitaran poco antes del vencimiento del término prescriptivo. ¿Cómo podía entenderse pasivamente abandonado el ejercicio de un derecho cuando las únicas personas que pueden ejercitarlo se encuentran dementes? Por todo el tiempo que dure la incapacidad, se considerará jurídicamente interrumpido el término prescriptivo fijado por ley, con la excepción, desde luego, de tratarse de una acción reivindicatoria de propiedad inmueble.

Queda por último considerar si una vez incapacitado el marido, la administración de la sociedad conyugal pasa automáticamente a la esposa. Argumenta la recurrida que al incapacitarse Iluminado Torres, Carmen María Torres era la administradora de la sociedad de gananciales compuesta por ambos; y que en tal carácter tenía la obligación de incoar la demanda dentro del año de ocurridos los hechos. Concluye que al no hacerlo así estaba prescrita la acción, no pudiendo invocar el Art. 40 en su favor. Cita en su apoyo a *Cordero Crespo* v. *Registrador*, 88 D.P.R. 826 (1963). Este caso no es de aplicación a la controversia aquí envuelta. En *Cordero Crespo* lo que se contemplaba era si una hija podía ser tutora del padre incapacitado, estando viva, pero muy enferma, la esposa del incapaz, situación muy distinta a la del caso de autos, ya que la tutela supone una previa determinación judicial de incapacidad, precisamente lo que no se hizo aquí ya que Iluminado Torres nunca fue declarado incapaz judicialmente antes de entablarse la demanda.

El Art. 1333 del Código Civil (31 L.P.R.A. sec. 3717) dispone: "La administración de los bienes del matrimonio se transferirá a la mujer cuando el marido esté incapacitado o ausente." Este artículo tiene su procedencia en el Art. 1441 del Código Civil Español, el cual dispone que: "La administración de los bienes del matrimonio se transferirá a la mujer:

1ro. Siempre que sea tutora de su marido, con arreglo al artículo 220;

2do. Cuando pida la declaración de ausencia del mismo marido, con arreglo a los artículos 183 y 185;

3ro. En el caso del párrafo primero del artículo 1436.

Los tribunales conferirán también la administración a la mujer, con las limitaciones que estimen convenientes, si el marido estuviere prófugo o declarado rebelde en causa criminal, o si hallándose absolutamente impedido para la administración, no hubiere proveído sobre ella."

La recurrida acepta que los comentaristas españoles están de acuerdo en que la administración de los bienes por la mujer tiene que ser previamente conferida por los tribunales.(²) Pero argumenta que en Puerto Rico debe ser todo lo contrario, ya que según ella nuestro artículo fue redactado en forma distinta al español, no necesitándose pronunciamiento judicial al efecto en nuestra jurisdicción.

Aparte de la confusión y posible lesión a los derechos del cónyuge afectado y de terceros inocentes que acarrearía el decidir en este sentido, no creemos que nuestro artículo esté redactado en términos tan distintos como para que se imponga darle una interpretación distinta. Ambos artículos están concebidos en términos de que "se transferirá" la administración de los bienes del matrimonio a la mujer. En lo único que varían es en cuanto a la enumeración de las circunstancias por las cuales se transferirá esta administración.

---

(²) Sobre el particular véanse:

9 Manresa—*Código Civil Español*, págs. 810 y sigtes. (ed. 1950).

4 Valverde—*Tratado de Derecho Civil Español*, pág. 395 (ed. 1938).

IV-I Puig Peña—*Derecho Civil*, págs. 209 y sigtes. (ed. 1966).

XXII Scaevola—*Código Civil*, pág. 936 (ed. 1967).

4 Bonet Ramón—*Compendio de Derecho Civil*, pág. 404 (ed. 1960).

IV Borrell y Soler—*Derecho Civil Español*, págs. 494 y sigtes. (ed. 1954).

5-I Castán—*Derecho Civil Español, Común y Foral*, pág. 296 (ed. 1960).

4-I Puig Brutau—*Fundamentos de Derecho Civil*, págs. 283 y sigtes. (ed. 1967).

■ Hay razones muy poderosas que obligan a concluir que se necesita una previa solicitud al tribunal y la aprobación de éste mediante resolución al efecto antes de que la mujer pase a ser la administradora de la sociedad de gananciales: 1. El hecho en sí de transferir a la mujer la administración de los bienes del matrimonio produce una grave perturbación en el régimen económico de la familia, y modifica profundamente la capacidad civil de los esposos y 2. ni la locura del marido, ni su ausencia, son por sí solas motivo suficiente ante la ley para que tal perturbación y modificación se produzcan, siendo necesario que los tribunales intervengan, ya declarando su incapacidad, ya justificándose ante ellos la ausencia. Solamente en los casos en que ha habido una previa declaración judicial de incapacidad o de ausencia es que no es necesario que la esposa acuda otra vez a los tribunales reclamando la administración de los bienes del matrimonio ya que justificadas estas diversas causas los mismos tribunales con arreglo a la ley, confieren a la esposa la representación y la administración de los bienes que correspondía anteriormente al esposo incapacitado o ausente, no siendo necesario que se reclame nuevamente la intervención del tribunal, para que le conceda de nuevo al cónyuge lo que ya tiene. (3)

En el caso de autos Carmen María Torres nunca había solicitado que se declarara incapaz a su esposo, ni tampoco solicitó que se le nombrara administradora de la sociedad conyugal, por lo tanto no podía ser tal administradora a la fecha en que ocurrió el fuego. No siendo la administradora no podía incoar la demanda, siendo ante la ley, su esposo el único que podía hacerlo. Planteada la defensa de prescripción, debe demostrarse en el juicio en sus méritos que Iluminado Torres estaba realmente incapacitado para la fecha en que ocurrieron los hechos.

---

(3) Al respecto véase: Manresa, tomo y obra citado a la página 811.

*Debe revocarse la sentencia que declaró sin lugar la primera causa de acción por estar la misma prescrita.*

### Fallo sobre la Segunda Causa de Acción
### Recurso R-67-358

Desestimada la primera causa de acción, el caso se vio en sus méritos solamente en cuanto a la segunda causa de acción, la de los hijos menores del matrimonio. La parte demandante presentó su prueba, a la terminación de la cual la demandada solicitó que se desestimara la acción. El tribunal declaró con lugar la moción de la demandada, dictando sentencia en contra de la demandante.

Las conclusiones de hechos, en su parte pertinente, son las siguientes:

Doña Carmen María Torres estaba casada con Iluminado Torres desde el 20 de octubre de 1955. En su matrimonio procrearon dos hijos: Jaime Luis y Carmen María, de ocho y siete años de edad respectivamente.

Para el día 16 de enero de 1965, la Sra. Torres residía con su esposo e hijos en una casa de dos habitaciones que habían construido en el patio de la residencia de doña Facunda Morales, abuela de doña Carmen María, en el Barrio Tallaboa Saliente de Peñuelas. Entre ambas casas había de 12 a 13 pies de separación.

La casa de doña Facunda Morales recibía la corriente eléctrica a través de dos alambres que partían de un poste localizado en el patio de un vecino, el señor Juan Hernández. De este poste, los alambres llegaban hasta otro que estaba en la calle.

El 16 de enero de 1965 ocurrió un fuego en casa de doña Facunda Morales, el cual se extendió a la casa de los esposos Torres, destruyendo dicha casa. Por tal suceso, la familia Torres perdió su hogar y tuvo que refugiarse en una casa propiedad de doña Nélida Morales. Allí vivieron durante 6 meses teniendo que desalojar la casa ante la insistencia de

la propietaria. Actualmente la familia Torres reside en el caserío Juan Rodríguez de Peñuelas.

Como resultado del incendio los demandantes perdieron, además de su vivienda, los utensilios y enseres del hogar y sus pertenencias.

Jaime Luis y Carmen María, después del siniestro bajaron su promedio escolar y se muestran tristes y sin ánimos.

El día del incendio doña Carmen María Torres se encontraba en Ponce y desconoce cómo surgió el mismo y cuál fue su origen. Seis meses antes ella, en compañía de dos vecinas se querelló ante un empleado de la Autoridad de las Fuentes Fluviales, señor Reinaldo Loyola, de las malas condiciones en que se encontraban los alambres de la luz eléctrica. Éstos estaban pelados por varios sitios, se encontraban separados a tres o cuatro pulgadas un alambre del otro y pasaban entre las ramas de un árbol de Jagüey que queda alrededor de 50 pies de la casa de doña Facunda Morales, tropezando con las mismas.

Doña Carmen María Torres además se querelló de la falta de alumbrado y dicha Autoridad puso una bombilla en el frente de la calle, pero no cambió los alambres ni "desgancharon" el árbol cuyas ramas interferían con los cordones de la luz eléctrica.

Esos cordones, que en varias partes habían perdido su capa aisladora, eran los que llevaban la corriente hasta la casa de doña Facunda Morales.

Estando el señor Marcos Bauzá, el 16 de enero de 1965, recortando a un hijo de la señora Lydia Brunet, a unos 75 ó 100 pies de la casa de doña Facunda Morales, observó que del árbol de Jagüey, por donde pasan los cordones de la electricidad, que queda a 50 pies aproximadamente de la casa de doña Facunda Morales, salió una chispa de candela y al minuto otra, y luego escuchó a doña Facunda y a su hija Hilda Nereida gritando y vio humo que salía con más densidad del segundo y último cuarto de la casa de doña Facunda Morales.

Ninguno de los testigos declaró cómo se inició y dónde se originó el fuego. Tampoco hay evidencia de que los cordones pelados en el poste que daba luz eléctrica a la casa de doña Facunda Morales tuvieran en alguna forma que ver con el origen del incendio.

Como ya hemos señalado, después de aquilatar estos hechos, el tribunal de instancia concluyó que no se demostró la existencia de un nexo causal entre el daño causado y la conducta de la demandada y en su consecuencia declaró sin lugar la demanda, en su segunda causa de acción.

Para llegar a esta conclusión el tribunal se apoyó principalmente en los casos de *Irizarry* v. *A.F.F.*, 93 D.P.R. 416 (1966) y *Burgos Quiñones* v. *Autoridad Fuentes Fluviales*, 90 D.P.R. 613 (1964).

En el caso de *Irizarry* al igual que en el presente caso se desestimó la demanda una vez presentada la prueba del demandante a moción de la Autoridad demandada. Este Tribunal confirmó la sentencia modificando la doctrina de *Mariani* v. *Christy*, 73 D.P.R. 782 (1952) en el sentido de que una vez presentada la prueba del demandante y al presentar el demandado una moción de *nonsuit*, si el juez está convencido de que el demandante no podrá prevalecer puede declarar la moción con lugar. Pero se hizo la salvedad de que esta facultad debe ejercitarse sólo en aquellos casos en que después de un escrutinio sereno y cuidadoso de la prueba se llega a la conclusión mencionada, y que, en caso de duda, es preferible requerir al demandado para que presente su caso.

En *Irizarry* la demandante alegó que unas vacas murieron electrocutadas debido a la negligencia de la demandada. Sin embargo, en manera alguna explicó la forma en que dicha corriente eléctrica se transmitió al lugar en que estaban los animales; y ni siquiera probó satisfactoriamente que dichos animales muriesen a consecuencia de la descarga eléctrica. Según la prueba de la demandante, el único acto de negligen-

cia de la demandada, consistió en aprobar la instalación eléctrica hecha por el demandante, siendo ésta defectuosa por carecer de un bajante de tierra.

Este Tribunal resolvió que esto no era suficiente para demostrar el nexo causal indispensable para la imposición de responsabilidad ya que la prueba del demandante no demostró que en momento alguno se le notificara a la Autoridad sobre defectos que crearan una situación de peligro, habiendo sido la instalación suficiente para recibir la corriente por más de ocho años. Lo que sí demostró la prueba fue que la instalación se cargó por el demandante con aparatos eléctricos adicionales, a los cuales tampoco se les suplió el bajante a tierra necesario.

En el caso de *Burgos Quiñones* un fuego consumió dos casas pertenecientes a los demandantes. Alegaron que el siniestro se originó en las líneas eléctricas propiedad de la Autoridad de las Fuentes Fluviales, que se debió única y exclusivamente a la negligencia de la Autoridad demandada. El caso se vio en sus méritos, siendo declarada con lugar la demanda. Este Tribunal revocó la sentencia ya que la prueba de los demandantes no estableció la relación causal necesaria para imponer responsabilidad. Tomó en consideración que la única testigo presentada por los demandantes para establecer el origen del fuego se contradijo en varias ocasiones, además de haber prestado una declaración con anterioridad a la vista del caso inconsistente con su testimonio en la misma. En adición a ello, la parte demandada presentó prueba testifical y pericial que demostró la imposibilidad física de que el fuego ocurriera en la forma alegada por los demandantes.

La prueba de los demandantes en *Burgos Quiñones* sólo estableció que hubo un fuego. Al llegar a su casa la testigo a que aludimos anteriormente, encontró que había humo en la misma y que los alambres tenían candela; que debido al calor que produjo el incendio se fracturó el cristal que pro-

tege el contador y quedaron al descubierto los alambres de la toma en unos cinco o seis pies próximos a la casa, yendo a caer éstos al patio de la casa destruida.

Estos dos casos son claramente distinguibles del de autos ya que aquí quedó satisfactoriamente demostrado por la demandante que la demandada fue negligente en el mantenimiento y cuidado de sus líneas,[4] habiendo recibido quejas al efecto, sin que se demostrase que actuase en forma alguna para remediar la situación surgida. Del récord también surge que el testigo Marcos Bauzá observó que del árbol de Jagüey por donde pasan los cordones eléctricos de la Autoridad salió una chispa de candela y al minuto otra, y luego vio humo que salía con más densidad del segundo y último cuarto de la casa de doña Facunda Morales. Siendo *prima facie* esta prueba suficiente para establecer la relación de causalidad entre el daño y la negligencia de la demandada.

El tribunal debió tomar en consideración el caso de *Murcelo v. H. I. Hettinger & Co.*, 92 D.P.R. 411 (1965) donde se resolvió que si bien es cierto que la parte que sostiene la afirmativa en un litigio es la que tiene el deber de presentar evidencia para probarla, la ley no exige aquel grado de prueba que, excluyendo la posibilidad de error, produzca absoluta certeza; porque tal prueba es rara vez posible. No tiene que probar su caso con exactitud matemática mediante evidencia directa, ni de modo concluyente, ni que produzca un grado tan perfecto de convicción que no admita la posibilidad de prueba en contrario, pudiendo probar su caso con prueba indirecta. La parte demandante, luego de haber presentado evidencia a cuya luz una persona razonable pueda quedar convencida de que el acto dañoso se debe a la culpa u omisión de la demandada no está obligada a eliminar o

---

[4] *Vda. de Dávila* v. *Fuentes Fluviales,* 90 D.P.R. 321 (1964); *Ramos* v. *Aut. Fuentes Fluviales,* 86 D.P.R. 603 (1962).

excluir toda otra posible causa del suceso del cual se deriva la responsabilidad exigida.

El tribunal de instancia erró al concluir que la prueba de la demandante no era suficiente para establecer el nexo causal entre el daño y la negligencia, y al desestimar la demanda en esa etapa de los procedimientos. Debió requerir que la demandada presentase su caso y a la luz de la prueba aportada por ambas partes dictar la sentencia que procediera.

*Debe revocarse también la segunda sentencia recurrida de fecha 13 de octubre de 1967 y devolverse al tribunal de instancia los autos originales para que en él se continúen, respecto a ambas causas de acción, los procedimientos en armonía con esta opinión.*