Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| BILLY CRESPO RIVERA<br><br>Apelante<br><br>V.<br><br>RAMLY HENRÍQUEZ GONZÁLEZ, ETC.<br><br>Apelada | KLAN202400107 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: MZ2022CV01819<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 26 de marzo de 2024.

El 7 de febrero de 2024, compareció ante este Tribunal de Apelaciones el señor Billy Crespo Rivera, (en adelante, parte apelante o señor Crespo Rivera), mediante recurso de *Apelación.* En el mismo nos solicita que revisemos la *Sentencia* emitida el 14 de diciembre de 2023 y notificada el 19 de diciembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez. En virtud del aludido dictamen, el foro *a quo* declaró Con Lugar la *Moción de Desestimación al Amparo de la Regla 10.2(5) de Procedimiento Civil* presentada el 2 de octubre de 2023 por el señor Ramly Henríquez González (en adelante parte apelada o señor Henríquez González).

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada que desestimó la *Demanda* con perjuicio, así como la imposición de honorarios de abogado a la parte apelante.

Número Identificador

SEN2024 _____

**I**

El caso que nos ocupa dio inicio el día 2 de diciembre de 2022, cuando el señor Billy Crespo Rivera (en adelante señor Crespo Rivera o parte apelante) interpuso ante el Tribunal de Primera Instancia una *Demanda* de interdicto permanente por alegado incumplimiento del señor Ramly Henríquez González, H/N/C Annie's Place con las disposiciones del Título III de la *Americans with Disabilities Act,* 42 U.S.C. § 12181 et seq. (en adelante "ADA"). Reclamó, además, daños de conformidad con el artículo 1536 del Código Civil de 2020, *infra.*

En la *Demanda,* el apelante alegó que sufre de depresión, ansiedad y claustrofobia, diagnosticadas desde el año 2017, por lo que, desde entonces se encuentra en tratamiento psiquiátrico con APS Health. Alegó que, los padecimientos descritos interfieren en la realización de sus actividades normales diarias, ya que su crisis de ansiedad y sus ataques de pánico se presentan sin advertencia o existencia de síntomas. Acotó que, no puede usar el cinturón de seguridad en su vehículo ni subirse a un ascensor solo, porque se siente encerrado o limitado, debido a la claustrofobia que le han diagnosticado. Añadió que, tampoco puede someterse a exámenes médicos en los cuales se utilicen equipos médicos grandes o que estén alrededor de su cuerpo, por lo que deben sedarlo completamente, pues de lo contrario, siente la necesidad de salir de allí y se desespera.

Particularmente el apelante alegó en la *Demanda* que visitó Annie's Place el día 15 de diciembre de 2021, por la cercanía a su hogar y porque quería comer en este popular y reconocido restaurante, sobre todo, porque queda cerca a la playa. Adujo que, ya había asistido a este lugar hacía varios años, al ser tanto su restaurante favorito como el de su hijo. Arguyó que, en la visita del 15 de diciembre de 2021, no se le permitió el ingreso, ya que tanto

la esposa del dueño como la supervisora intervinieron de manera hostil para impedirle entrar, pues, le comentaron que nadie entraba sin vacunas ni mascarilla, y no cambiaron de opinión, pese a su solicitud de un acomodo razonable por su discapacidad, por la cual, no puede usar una mascarilla. Aseveró el apelante que lo que le hizo sentir discriminado, triste y humillado, fue el trato hostil y grosero, con el cual le indicaron que debía utilizar una mascarilla si quería ser atendido en Annie's Place. Arguyó que, la parte apelada lo echó del lugar y le negó el servicio profiriéndole gritos y palabras hostiles. Insistió en que lo anterior afectó de manera grave a la parte apelante, y le generó un daño emocional, pues por sus condiciones de salud mencionadas anteriormente, así como lo humillante y grosero que fue dicho trato, se sintió muy mal anímica y emocionalmente. El apelante acotó que, no usa mascarilla debido a sus enfermedades, y no a un capricho deliberado. Alegó que, el día que ocurrieron los hechos intentó explicar la razón por la cual no utiliza su mascarilla, pero la parte apelada, por conducto de sus empleados, no lo escuchó, y decidió negarle un trato igualitario en los servicios ofrecidos por la propiedad.

Posteriormente, el día 24 de mayo de 2023, la parte apelada presentó *Contestación a Demanda* negando la mayoría de las alegaciones de la *Demanda,* reconociendo únicamente ciertos detalles específicos como su titularidad sobre Annie's Place y la negativa de entrada a la parte apelante basada en directrices de salud pública. En su alegación responsiva, la parte apelada articuló varias defensas afirmativas y, además, calificó la demanda como frívola y temeraria. Por lo anterior, solicitó la desestimación de la demanda y la imposición a la parte apelante del pago de costas y honorarios de abogado.

Acaecidas varias incidencias procesales innecesarias pormenorizar, el 2 de octubre de 2023, la parte apelada incoó ante

el foro *a quo*, *Moción de Desestimación al Amparo de la Regla 10.2(5) de Procedimiento Civil*. En apretada síntesis argumentó que, el asunto del interdicto es académico, toda vez que, el requisito de usar mascarilla ya no está vigente, y porque existe una orden de protección bajo la Ley 284-1999 dictada contra el señor Crespo Rivera que le impide entrar al Restaurante Annie's Place hasta febrero de 2027. Añadió que, la demanda de daños no aduce hechos que justifiquen la concesión de un remedio. En la misma fecha, la parte apelada presentó otro escrito intitulado como *Moción para presentar anejo 5 de la moción de desestimación*, a través de la cual sometió el aludido anejo.

Transcurrida una prórroga solicitada y concedida, el 2 de noviembre de 2023, la parte apelante presentó *Oposición a Desestimación*. En esencia, acotó que el caso no es académico y que la conducta de la parte apelada constituye un trato discriminatorio bajo la ADA. Sostuvo que, a pesar del cese de las restricciones de COVID-19, la parte apelada no ha demostrado con certeza que no repetirá las conductas impugnadas. Arguyó que, la *Demanda* contiene hechos suficientes para justificar un remedio legal tanto bajo la Ley ADA como bajo el Artículo 1536 del Código Civil, *infra*, debido a los daños emocionales y el trato humillante sufrido por el apelante. Apoyado en los aludidos argumentos, le solicitó al foro primario que denegara la moción de desestimación y permitiera que el caso avanzara a la etapa de descubrimiento de prueba y, de ser necesario, a juicio.

Posteriormente, el 28 de noviembre de 2023, el foro *a quo* dio por sometida la moción de desestimación presentada por la parte apelada y el día 19 de diciembre de 2023, notificó *Sentencia* mediante la cual desestimó la *Demanda*. Basó su dictamen en el hecho de que las restricciones de COVID-19 en Puerto Rico, que fundamentaban la acción legal fueron dejadas sin efecto,

convirtiendo en académico el reclamo de entrar al restaurante sin mascarilla. Aludió a que una orden de protección existente le prohibía al apelante entrar al restaurante hasta 2027, lo que invalidaba cualquier orden judicial que permitiera su entrada. Por último, la primera instancia judicial determinó que no hubo violación de ley por parte del señor Henríquez González al negar la entrada a la parte apelante, descartando así, la causa de acción por daños y perjuicios. En mérito de lo anterior, el 14 de diciembre de 2023, el foro de instancia declaró Con Lugar la *Moción de Desestimación al Amparo de la Regla 10.2(5) de Procedimiento Civil* interpuesta por la parte apelada. En específico, dispuso lo siguiente:

> Por todo lo anterior, este Tribunal declara Con Lugar la moción de desestimación presentada por el señor Henríquez y en consecuencia dicta sentencia en la que desestima la demanda con perjuicio. Se le impone al señor Crespo el pago de las costas del proceso y $2,000.00 de honorarios de abogado.

En desacuerdo con lo resuelto por el foro primario, el día 3 de enero de 2024, la parte apelante presentó *Moción de Reconsideración.* Argumentó que la *Sentencia* desestimatoria no abordó adecuadamente las alegaciones de discriminación y trato humillante, que, a su juicio, violaron la Ley ADA. En esencia, la parte apelante acotó que la parte apelada, a través de sus empleados, no solo incumplió con proporcionarle un acomodo razonable, sino que también violó los principios antidiscriminatorios de la ADA al someterla a maltrato y humillación.

En respuesta, el 4 de enero de 2024, la parte apelada interpuso su *Oposición a "Moción de Reconsideración".* En apretada síntesis, recabó del foro primario que mantuviera su dictamen, toda vez que, la decisión fue correcta, ya que la *Demanda* se centraba en la solicitud del apelante de entrar a Annie's Place sin mascarilla y sin estar vacunado.

En la misma fecha, el Tribunal de Primera Instancia dictó la *Resolución* que se transcribe a continuación:

ATENDIDA LA PRESENTE MOCIÓN EN CONJUNTO CON LA OPOSICIÓN PRESENTADA POR LA PARTE DEMANDADA, ESTE TRIBUNAL DETERMINA LO SIGUIENTE: **NO HA LUGAR A LA SOLICITUD DE RECONSIDERACIÓN PRESENTADA POR LA PARTE APELANTE.**

Inconforme, la parte apelante acudió ante este foro revisor mediante recurso de *Apelación* y esgrimió los siguientes señalamientos de error:

**Primero:** Erró el TPI al expedir una sentencia sin tomar en consideración la causa de acción de daños bajo el Artículo 1536 del nuevo Código Civil de Puerto Rico ni las alegaciones indicadas en la demanda sobre esta.

**Segundo:** Erró el TPI al imponer el pago de honorarios de abogado ya que en el presente caso no ha mediado temeridad y fue desestimado por academicidad.

El 11 de marzo de 2024, la parte apelada compareció mediante *Alegato del Apelado Ramly Henríquez González.* Con el beneficio de la comparecencia de las partes procedemos a resolver.

**II**

## A. *Academicidad*

Como sabemos, los tribunales revisores solo podremos resolver los casos que sean justiciables. *Bhatia Gautier v. Gobernador,* 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920 (2011). Nuestro Tribunal Supremo ha reiterado que, bajo el precepto de justiciabilidad, "[l]a intervención de los tribunales tendrá lugar sólo si existe una controversia genuina entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas". *Hernández, Santa v. Srio. de Hacienda,* 208 DPR 727, 738 (2022).

El Máximo Foro ha resuelto que una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en

académica; (4) las partes están tratando de obtener una opinión consultiva; o (5) se intenta promover un pleito que no está maduro. *Super Asphalt v. AFI y otros*, 206 DPR 803 (2021); *Bhatia Gautier v. Gobernador*, supra, págs. 68-69.

En consonancia con lo anterior, nuestra última instancia judicial ha reconocido que los tribunales pierden su jurisdicción sobre una controversia cuando, durante el trámite judicial, ocurren cambios fácticos o judiciales que tornan en académica o ficticia su solución. Esto es, el foro judicial no puede entender sobre un caso que ha perdido su condición de controversia viva y presente en atención a los cambios fácticos o de derecho acaecidos en el transcurso del tiempo. *Pueblo v. Pagán Medina*, 177 DPR 842, 844 (2010); *Super Asphalt v. AFI y otros*, supra, pág. 816. Asimismo, deberán ser evaluados los eventos anteriores, próximos y futuros, a los fines de determinar si la controversia entre las partes sigue viva y subsiste con el tiempo. *Íd.*

Una vez se determina que ha desaparecido el carácter adversativo entre los intereses de las partes involucradas, los tribunales pierden su jurisdicción en el pleito y, por tanto, deben abstenerse de considerar el caso en sus méritos. Con esta limitación sobre el poder de los tribunales, se persigue evitar el uso innecesario de los recursos judiciales y obviar pronunciamientos autoritativos de los tribunales que resulten superfluos. (Citas omitidas). *Smyth, Puig v. Oriental Bank*, 170 DPR 73, 78 (2007). Véase *Super Asphalt v. AFI y otros*, supra, pág. 816.

Existen varias excepciones a la doctrina de academicidad: a saber, cuando se plantea una cuestión recurrente y que por su naturaleza evade o se hace muy difícil la adjudicación ante los tribunales; en aquellos casos en que la propia demandante termina voluntariamente su conducta ilegal; si la situación de hechos ha sido modificada por el demandado, pero no tiene visos de

permanencia; en los casos en que el tribunal ha certificado un pleito de clase y la controversia se tornó académica para un miembro de la clase, mas no para el representante de la misma; o aquellos casos que aparentan ser académicos, pero que en realidad no lo son por sus consecuencias colaterales. *El Vocero v. Junta de Planificación*, 121 DPR 115 (1988); *Smyth, Puig v. Oriental Bank*, supra, pág. 78.

## B. Responsabilidad Civil Extracontractual

El Artículo 1536 de nuestro Código Civil, 31 LPRA §5311 *et seq*, dispone que la persona que por culpa o negligencia cause daño a otra, viene obligado a repararlo. Para que prospere una reclamación por daños y perjuicios al amparo del referido precepto legal, se requiere la concurrencia de tres elementos, los cuales tienen que ser probados por la parte demandante: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante.

El daño constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra persona. En nuestro ordenamiento jurídico se reconoce la existencia de dos tipos de daños: los especiales, conocidos como daños físicos, patrimoniales, pecuniarios o económicos, y los generales, conocidos como daños morales. *Nieves Díaz v. González Massas*, 178 DPR 820, 845 (2010).

## C. Responsabilidad de los Centros Comerciales

Existen actividades comerciales cuya naturaleza les imponen un deber de cuidado y protección para con sus clientes. En *Sociedad v. González Padín*, 117 DPR 94 (1986), nuestro Más Alto Foro estableció que el dueño de un establecimiento comercial abierto al público debe mantenerlo en condiciones de seguridad tales que las

personas inducidas a penetrar en el mismo no sufran ningún daño. El incumplimiento de este deber por parte del propietario o sus empleados es fuente de responsabilidad extracontractual. Véase, *Colón v. Kmart*, 154 DPR 510 (2001); *J.A.D.M v. Centro Comercial Plaza Carolina*, 132 DPR 785 (1993). Dicha obligación implica que el dueño u operador tiene el deber de ejercer un cuidado razonable para mantener la seguridad de las áreas accesibles al público o cliente para que de ese modo se evite que sus clientes sufran de algún daño. *Sociedad v. González Padín, a la pág. 104; Colón v. Kmart* y otros, *supra*.

Por ejemplo, en casos criminales, nuestro Tribunal Supremo además ha expresado que lo determinante al momento de evaluar si un establecimiento comercial tiene el deber de ofrecer seguridad adecuada y razonable a sus clientes y visitantes, no es el tamaño ni la clasificación del establecimiento. Lo preciso será analizar, la totalidad de las circunstancias del caso, en particular: (1) la naturaleza del establecimiento comercial y de las actividades que allí se llevan a cabo; (2) la naturaleza de la actividad criminal que se ha registrado y se está registrando en las facilidades y en el área donde está ubicado el establecimiento; y (3) las medidas de seguridad existentes en el mismo. *Santiago Colón v. Supermercado Grande,* 166 DPR 796, 813 (2006); *J.A.D.M. v. Centro Comercial Plaza Carolina*, supra. En reiteradas ocasiones, este además ha aclarado que el dueño de un establecimiento comercial es responsable bajo el Art. 1802[1] del Código Civil cuando crea una condición peligrosa dentro del establecimiento, en el área designada para el flujo de clientes, si tal condición es causa eficiente y próxima del accidente que ocasiona los daños a la parte demandante.

---

[1] Artículo enmendado por el Art. 1536 del Nuevo Código Civil de Puerto Rico que entró en vigencia el 28 de noviembre de 2020 a través de la Ley 55 del 1 de junio de 2020.

Ahora bien, aunque los dueños de los establecimientos comerciales tienen un deber de mantener el local en condiciones de seguridad tales que sus parroquianos no sufran daños, los dueños no son aseguradores absolutos de los daños que sufran sus clientes en los predios del negocio. De este modo, se impondrá responsabilidad al dueño del establecimiento por daños sufridos por un patrocinador o visitante del negocio cuando la causa de los daños esté vinculada a condiciones peligrosas dentro del establecimiento, las cuales eran de conocimiento de los propietarios o su conocimiento era imputable a ellos. El demandante en este caso, tiene la carga de probar que el dueño no ejercitó el cuidado debido. Véase, *Colón v. Plaza Las Américas*, 136 DPR 235 (1994). En otras palabras y como anteriormente establecido, el dueño del establecimiento no es un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección, y que el visitante tiene que probar que el dueño del establecimiento no ha ejercido el cuidado debido para que el local sea seguro para él. *Cotto v. C.M. Ins. Co.,* 116 DPR 644, 650 (1985).

Recapitulamos, como regla general, le corresponde a la parte actora en un caso de daños y perjuicios donde alegue haber sufrido daños como consecuencia de la negligencia de la parte demandada el peso de la prueba respecto a dicha alegada negligencia. *Vaquería Garrochales, Inc. v. A.P.P.R.*, 106 DPR 799 (1978); *Irizarry v. A.F.F.*, 93 DPR 416 (1966); *Morales Mejías v. Met. Pack. & Ware. Co.*, 86 DPR 3 (1962). En palabras más sencillas, la parte demandante tiene la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia mediante la presentación de prueba a esos efectos.

### D. Medidas cautelares por razón de la Pandemia Covid-19

A tenor con el estado de emergencia a nivel mundial, el Gobierno de Puerto Rico emitió varias órdenes ejecutivas con el propósito de implementar medidas restrictivas para controlar los contagios de COVID 19 en la Isla. El 12 de marzo de 2020 la entonces Gobernadora de Puerto Rico, Hon. Wanda Vázquez Garced (en adelante, la Gobernadora), mediante la Orden Ejecutiva 2020-20, decretó un estado de emergencia ante la amenaza provocada por la pandemia por la propagación de COVID-19 (coronavirus). El 15 de marzo de 2020, la Gobernadora emitió la Orden Ejecutiva 2020-23 decretando un cierre total y toque de queda que aplicaba a entes gubernamentales y privados, con ciertas exclusiones relacionadas a servicios esenciales. La Orden Ejecutiva se extendió en dos ocasiones, con vigencia hasta el 3 de mayo de 2020. El 1 de mayo de 2020, se emitió la OE-2020-038, mediante la cual se extendió el toque de queda hasta el 25 de mayo de 2020. Esa orden flexibilizó las actividades económicas autorizadas, sujeto a varias condiciones dirigidas a prevenir el riesgo de contagio.

Mediante la OE-2021-036 del 20 de mayo de 2021, el Gobernador de Puerto Rico, Pedro Pierluisi Urrutia (en adelante, el Gobernador) dejó sin efecto el toque de queda. No obstante, se estableció que las personas venían obligadas a cumplir con las medidas cautelares impuestas en dicha Orden Ejecutiva. Entre las aludidas medidas cautelares, se dispuso que las operaciones privadas que atendieran público debían tener una ocupación máxima de un cincuenta por ciento (50%) en aquellos lugares o espacios cerrados. En los espacios abiertos, no existía tal limitación, siempre y cuando, se mantuviera un distanciamiento físico mínimo, de seis (6) pies de distancia.

Subsiguiente, y con el objetivo específico de proteger la salud del pueblo de Puerto Rico, el Gobierno entendió meritorio tomar

acciones claras y contundentes para asegurar que cada ciudadano estuviese saludable. Consecuentemente, con el interés apremiante de salvaguardar la vida de toda la población en general y asegurar minimizar la posibilidad de contagio en actividades medulares y lugares de alta exposición al virus, mediante la Orden Ejecutiva OE-2021-063, el Gobernador Pedro Pierluisi Urrutia, implementó acciones afirmativas -como el requerimiento de la vacunación o prueba negativa de COVID-19- **en locales donde se expendía bebida o comida preparada, tales como restaurantes**, teatros, cines, coliseos y centros de actividades, a fin de evitar contagios en esas facilidades.

Atinente a la controversia que nos ocupa, el **15 de noviembre de 2021**, el Gobernador promulgó la Orden Ejecutiva **OE-2021-075** mediante la cual, entre otros asuntos, estableció una serie de medidas cautelares que debían tomar las personas en su carácter individual, a los fines de evitar el contagio con el virus y salvaguardar su vida y la de las demás personas.

En particular, la Sección cuarta (4ª) de la precitada Orden Ejecutiva disponía lo siguiente:

[.....]

MEDIDAS CAUTELARES INDIVIDUALES. Toda persona que esté en contacto con cualquier persona fuera de su unidad familiar deberá cumplir con las siguientes medidas de protección:

1. Cubrirse el área de la boca y la nariz con una mascarilla o bufanda de tela u otro material, conforme las directrices del Departamento de Salud y las siguientes guías:

a. Todas las personas deberán utilizar mascarillas en lugares cerrados, tales como comercios, oficinas médicas, casinos, servicios financieros, servicios al consumidor, profesionales, no profesionales, universitarios y postsecundarios, religiosos, cines, teatros, coliseos, barras, entre otros. Esto, independientemente de su estatus de vacunación contra el COVID-19. Quedan exceptuadas las personas que participen en reuniones de veinte (20) personas o menos en las que todos los presentes estén completamente

vacunados y aquellas que lleven a cabo actos en las que el uso de la mascarilla sea incompatible o afecte su salud.

b.   Es requerida la mascarilla en espacios al aire libre, aunque la persona esté parcial o completamente vacunada, cuando haya una actividad concertada u organizada que implique aglomeración de cincuenta (50) o más personas. Se recomienda su utilización en lugares turísticos en los que también haya una aglomeración de visitantes.

c.   Empleados en los hospitales y centros que brinden servicios de salud deberán utilizar las mascarillas KN-95 o N-95.

d.   El Departamento de Salud podrá exigir la utilización de mascarillas en otros escenarios en los que determine adecuado para evitar futuros contagios.

e.   Se entiende por "mascarilla" cualquier producto de tela u otro material que cubre la boca, la nariz y la barbilla, provisto de un arnés de cabeza que puede rodear la cabeza o sujetarse a las orejas. Lo anterior, según las recomendaciones y especificaciones del Departamento de Salud y los CDC.

2.   Mantener un espacio mínimo de seis (6) pies entre sí y las demás personas fuera de su unidad familiar, evitando cualquier aglomeración.

3.   Lavar sus manos con agua y jabón regularmente, o con desinfectantes de manos aprobados por entidades oficiales de salud.

Asimismo, en la Sección décima (10ª) de la aludida Orden

Ejecutiva se dispuso que:

REQUERIMIENTO A VISITANTES. En aras de lograr salvaguardar la salud de toda la población en Puerto Rico y minimizar los contagios, ordeno que a partir de la vigencia de esta Orden Ejecutiva todos los restaurantes (incluyendo los "fast foods", "food courts" y cafeterías), barras, chinchorros, cafetines, "sport bars", teatros, cines, coliseos, centros de convenciones y de actividades, y cualquier otro local que expenda bebida o comida preparada, hoteles, paradores, hospederías, salones de belleza, barberías, salones de estética, spa, gimnasios y casinos, deberán verificar que todos sus visitantes -sujeto a las excepciones dispuestas en esta sección- cumplan con una de las siguientes condiciones:

1.   que el visitante presente evidencia de que está debidamente inoculado con una vacuna autorizada por la FDA para atender la emergencia del COVID-19 o

cualesquiera otras incluidas en la lista de uso de emergencia de la WHO;

2. que el visitante presente un resultado negativo de COVID-19 proveniente de una prueba viral cualificada SARS-CoV-2 (pruebas de amplificación del ácido nucleico ("NAA T") o pruebas de antígeno) realizada dentro de un término máximo de 72 horas antes de la visita y que haya sido procesada por un profesional de la salud autorizado, previo a acceder al comercio, o

3. que el visitante presente un resultado positivo a COVID-19 de los pasados 3 meses, junto con documentación de su recuperación, incluyendo una carta de un proveedor de salud certificado o de algún oficial gubernamental de salud que certifique que la persona está recuperada y lista para comparecer a lugares públicos.

Será responsabilidad de cada negocio o entidad comercial solicitar a cada visitante aplicable -antes de que entre al comercio- que presente el certificado de inmunización ("COVID-19 Vaccination Record Card' o "Vacu ID"), el resultado negativo de la prueba viral o el resultado positivo a COVID-19 de los pasados tres (3) meses, junto con documentación de su recuperación. Por su parte, será responsabilidad del visitante presentar su certificado de inmunización ("COVID-19 Vaccination Record Card' o "Vacu ID"), el resultado negativo de la prueba viral o el resultado positivo a COVID-19 de los pasados tres (3) meses, junto con documentación de su recuperación, como condición para poder acceder al comercio. El certificado de inmunización o la prueba viral podrá ser presentada por cualquier otro método físico o digital. **Es importante señalar que lo dispuesto en esta Orden Ejecutiva no limita la facultad de cualquier operador privado de implementar restricciones adicionales a las aquí dispuestas. Es decir, nada de lo dispuesto en esta Orden Ejecutiva debe interpretarse como que los operadores privados no pueden tomar medidas adicionales o más restrictivas, incluyendo, pero no limitándose a cualquier restricción voluntaria de su horario de operaciones, autolimitación de espacio o cantidad de personas que pueden permanecer en su interior.** (*Énfasis nuestro*).

Quedan exceptuados de cumplir con el cernimiento dispuesto en esta sección todos los menores de cinco (5) años, quienes por ahora no pueden ser vacunados. En cambio, las disposiciones de esta sección le serán aplicables a los niños de cinco (5) años a once (11) años -ya que están en proceso de vacunación- luego del 31 de enero de 2022.

Asimismo, en el caso de los restaurantes (incluyendo los "fast foods", "food courts" y cafeterías), barras, chinchorros, cafetines y "sport bars", están exceptuadas de esta Sección todas las personas que única y exclusivamente adquieran alimentos en modo de entrega ("de/iver/'), servicarro o recogido ("curbside

pickup" o "pickup"); es decir, que no consumirán alimentos dentro del establecimiento comercial. **Cualquier visitante que se niegue a cumplir con los requerimientos dispuestos en esta Orden Ejecutiva, según implementados por el operador privado, no podrá acceder al local.** De ser la persona un huésped de un hotel, parador o hospedería, incluyendo los alquileres a corto plazo, éste no podrá acudir ni pernoctar en el referido lugar hasta tanto y en cuanto cumpla con las disposiciones de esta Orden Ejecutiva. Se insta a todos los ciudadanos a cooperar con los operadores privados para el cumplimiento con lo aquí dispuesto. **De cualquier ciudadano no cooperar y tratar de forzar a algún operador privado a incumplir con las disposiciones de esta Orden Ejecutiva, podrá estar sujeto a lo dispuesto en la Sección 14ª de esta Orden y a cualquier otra disposición del Código Penal de Puerto Rico aplicable. Cualquier restaurante (incluyendo los "fast foods", "food courts" y cafeterías), barra, chinchorro, cafetín, "sport bars",** teatro, cine, coliseo, centro de convenciones **y de actividades, y cualquier otro local que expenda bebida o comida preparada,** además de cualquier salón de belleza, barbería, salón de estética, spa, gimnasio o casino **que no cumpla con los requerimientos dispuestos anteriormente, estará obligado a limitar su aforo a una capacidad máxima del 50% del local, según el código de edificación vigente en Puerto Rico (PR Building Code 2018).** (*Énfasis nuestro*).

FISCALIZACIÓN. Se ordena que las agencias concernientes fiscalicen el fiel cumplimiento de lo establecido en esta Orden Ejecutiva. A su vez, se insta al público a informar a las autoridades pertinentes de entidades que incumplan con lo aquí dispuesto. Con el propósito de que los ciudadanos puedan contribuir a la fiscalización y al cabal cumplimiento con esta Orden Ejecutiva, se ordena que cada comercio o establecimiento tenga afiches en lugares visibles notificando la línea confidencial para el COVID-19 creada por el Departamento de Salud. El afiche o anuncio debe informar si el lugar realiza cernimiento de vacunación o de prueba negativa en su entrada. Este afiche o letrero deberá contener la siguiente información de contacto para que los ciudadanos puedan reportar incumplimientos: a) Teléfono: (787) 522-6300, extensiones 6899, 6840, 6824, 6833 y 6893 b) Correo electrónico: investigaciones@salud.pr.gov. Se requiere, además, que de no realizarse el cernimiento aquí dispuesto, el afiche o letrero mencionado anteriormente deberá contener el número de personas que compone la ocupación máxima requerida de 50% de la capacidad del lugar, según el código de edificación vigente en Puerto Rico (PR Building Code 2018) y autorizado por el Negociado del Cuerpo de Bomberos de Puerto Rico, lo anterior, so pena de incumplimiento con esta Orden Ejecutiva. Se insta a que los ciudadanos notifiquen a las agencias concernientes, incluyendo al Departamento de Salud, de cualquier operador privado que no esté cumpliendo con el cernimiento o con la

limitación del 50% de capacidad del lugar, según dispuesto en esta Orden Ejecutiva.

En la décimo cuarta (14ª) sección de esta Orden Ejecutiva, el Primer Mandatario estableció que, por el incumplimiento con lo ordenado, se estaría sujeto las siguientes penalidades:

> INCUMPLIMIENTO. Ante el incumplimiento con las disposiciones contenidas en esta Orden Ejecutiva por cualquier persona y/o empresa, se implementarán las sanciones penales y aquellas multas establecidas por el Artículo 5.14 de la Ley Núm. 20-2017, según enmendada, la cual establece pena de reclusión que no excederá de seis (6) meses o multa que no excederá de cinco mil ($5,000) dólares o ambas penas a discreción del tribunal y de cualquier ley aplicable. De igual forma, conforme a las disposiciones del inciso (a) del Art. 33 de la Ley orgánica del Departamento de Salud, "[t]oda persona natural o jurídica que infrinja las disposiciones de esta ley o de los reglamentos dictados por el Departamento de Salud al amparo de los mismos incurrirá en delito menos grave y sentenciado que podrá ser sancionada con pena de reclusión que no excederá de seis (6) meses o multa no mayor de cinco mil dólares ($5,000) o ambas penas a discreción del tribunal". De otra parte, el inciso (b) de este artículo dispone que "[t]oda persona natural o jurídica que infrinja por primera vez las disposiciones de esta ley o de los reglamentos dictados por el Departamento de Salud al amparo de la misma, será responsable de una multa administrativa no mayor de cinco mil (5,000) dólares, según las disposiciones de la [Ley Núm. 38-2017, "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"]; en el caso de incurrir nuevamente en violación a esta ley o los reglamentos dictados por el Departamento en virtud de la misma en un período de tiempo de un (1) año, la multa impuesta podrá ser aumentada hasta un máximo de diez mil (10,000) dólares". De incumplir con las disposiciones de esta Orden, la persona estará sujeta a enfrentar un proceso penal, el cual deberá ser iniciado sin dilación alguna por el Ministerio Público, quien, a su vez, deberá solicitar fijación de fianza, según lo establecen las Reglas de Procedimiento Criminal.

Con posterioridad, mediante la Orden Ejecutiva 2021-504, el Gobernador sostuvo la declaración de emergencia y delegó al Secretario de Salud el poder para establecer directrices relacionadas al COVID-19. En consonancia con la directriz impartida por el Gobernador, el Secretario de Salud instauró el requisito de uso de mascarillas y la vacunación compulsoria contra COVID-19 mediante

las Órdenes Administrativas concernientes y se promulgó el Reglamento 9210 del Departamento de Salud.

### E. La Moción de Desestimación

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, faculta a la parte contra la cual se presente una alegación en su contra a presentar una moción de desestimación, por los fundamentos siguientes: 1) falta de jurisdicción sobre la materia; 2) falta de jurisdicción sobre la persona; 3) insuficiencia del emplazamiento; 4) insuficiencia del diligenciamiento del emplazamiento; 5) dejar de exponer una reclamación que justifique la concesión de un remedio, y 6) dejar de acumular una parte indispensable. *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 396 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013). La precitada regla permite a la parte demandada presentar una moción de desestimación debidamente fundamentada previo a contestar la demanda instada en su contra. *Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022); *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043, 1065 (2020).

Asimismo, el Tribunal Supremo de Puerto Rico ha establecido que, al momento de considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. *Cobra Acquisitions v. Mun. Yabucoa et al.*, supra; *Casillas Carrasquillo v. ELA*, supra; *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, supra, pág. 49; *Cruz Pérez v. Roldán Rodríguez*, 206 DPR 261, 267 (2021); *Colón Rivera et al. v. ELA*, supra, pág. 1049. Es por lo que, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su

reclamación, aun interpretando la demanda lo más liberalmente a su favor". *Cobra Acquisitions v. Mun. Yabucoa et al.*, supra; *Casillas Carrasquillo v. ELA*, supra; *Cruz Pérez v. Roldán Rodríguez*, supra, págs. 267-268; *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, supra, pág. 49; *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 654 (2013); *López García v. López García*, 199 DPR 50, 69-70 (2018).

### F. Regla 44.1-Honorarios de Abogados

La concesión de honorarios de abogado está regulada por la Regla 44.1 (d) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 44.1 (d). La misma autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado procede con temeridad o frivolidad. *Pérez Rodríguez v. López Rodríguez*, 210 DPR 163, 192 (2022).

La *temeridad* se define como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables. *Íd*, pág. 193; *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Sobre este particular, nuestro más Alto Foro ha expresado también que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia." *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

Por otro lado, la frivolidad se define como "aquello que no tiene razón de ser, sin méritos, sin peso ni lógica alguna." *Depto. Rec. v. Asoc. Rec. Round Hill*, 149 DPR 91, 100 (1999). Sólo lo claramente irrazonable o inmeritorio debe dar paso a una determinación de frivolidad por un tribunal apelativo. *Id*.

En Feliciano *Polanco v. Feliciano González,* 47 DPR 722, 730 (1999), el Tribunal Supremo de Puerto Rico indicó que "[a] modo de ejemplo, constituyen actos temerarios los siguientes:

cuando el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente; cuando se defiende injustificadamente de la acción que se presenta en su contra; cuando no admite francamente su responsabilidad limitada o parcial, a pesar de creer que la única razón que tiene para oponerse a la demanda es que la cuantía es exagerada; cuando se arriesga a litigar un caso del que prima facie se desprende su negligencia; o cuando niega un hecho que le consta ser cierto."

El propósito de la imposición de honorarios de abogado en casos de temeridad es "establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010); *Pérez Rodríguez v. López Rodríguez*, supra; *González Ramos v. Pacheco Romero*, supra; *Fernández v. San Juan Co.*, Inc., 118 DPR 713, 718 (1987).

Además, la imposición de honorarios de abogado tiene como objetivo disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte. *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718-719 (1987). Nuestro más Alto Foro ha dispuesto que, la facultad de imponer honorarios de abogados es la mejor arma que ostentan los tribunales para gestionar de forma eficaz los procedimientos judiciales y el tiempo de la administración de la justicia, así como para proteger a los litigantes de la dilación y los gastos innecesarios. *González Ramos v. Pacheco Romero*, supra.

La determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que éste ha abusado de su discreción. *Pérez Rodríguez v. López Rodríguez*, supra; *González Ramos v. Pacheco Romero*. Tampoco será variada

la partida concedida a menos que resulte ser excesiva, exigua o constituya un abuso de discreción. *Feliciano Polanco v. Feliciano González, supra*, a las págs. 728-729.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

En su primer señalamiento de error, la parte apelante nos plantea que, incidió el foro primario al expedir una sentencia sin tomar en consideración la causa de acción de daños bajo el Artículo 1536 del nuevo Código Civil de Puerto Rico ni las alegaciones indicadas en la demanda sobre esta. No le asiste la razón.

De entrada, es preciso destacar que, en su *Moción de Reconsideración* de la sentencia, la parte apelante no argumentó lo señalado ante este foro como error, a los efectos de que el foro apelado no consideró su reclamo al amparo del Artículo 1536 del Código Civil de 2020, *supra.* Por el contrario, señaló que el Tribunal de Primera Instancia sostuvo que la Demanda no establecía una acción en daños y perjuicios, ya que los hechos alegados no demostraban una violación legal por parte del demandado. Su argumentación ante el foro intimado más bien, se circunscribió eminentemente, a sus alegaciones por violaciones a la Ley ADA.

La parte apelante reclama los alegados daños y perjuicios sufridos, luego de que el 15 de diciembre de 2021, no se le permitiera el ingreso al restaurante Annie's Place. Arguyó que, tanto la esposa del dueño como la supervisora intervinieron de manera hostil para impedirle entrar, ya que según le indicaron, nadie entraba sin vacunas ni mascarilla. Esgrimió que la parte apelada le negó un acomodo razonable por su discapacidad, por la cual no podía usar una mascarilla.

Tal cual fue esbozado previamente, nuestro ordenamiento jurídico establece que para que prospere una reclamación por daños

y perjuicios al amparo del Artículo 1536 de nuestro Código Civil, *supra*, se requiere la concurrencia de tres elementos, los cuales tienen que ser probados por la parte demandante: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante.

Como sabemos, por razón de la Pandemia del Covid-19, en ánimo de preservar la vida, y la salud de la ciudadanía en general, el Gobierno se vio precisado de tomar medidas cautelares, por lo que, emitió sendas órdenes ejecutivas y administrativas, así como el Reglamento 9210.

Particularmente atinente al caso ante nos, el **15 de noviembre de 2021**, el Gobernador promulgó la Orden Ejecutiva **OE-2021-075,** la cual, entre otros asuntos, estableció lo siguiente:

**MEDIDAS CAUTELARES INDIVIDUALES**
Toda persona que esté en contacto con cualquier persona fuera de su unidad familiar deberá cumplir con las siguientes medidas de protección:

1. Cubrirse el área de la boca y la nariz con una mascarilla o bufanda de tela u otro material, conforme las directrices del Departamento de Salud y las siguientes guías:

   a. **Todas las personas deberán utilizar mascarillas en lugares cerrados, tales como comercios, oficinas médicas, casinos, servicios financieros, servicios al consumidor, profesionales, no profesionales, universitarios y postsecundarios, religiosos, cines, teatros, coliseos, barras, entre otros. Esto, independientemente de su estatus de vacunación contra el COVID-19.** Quedan exceptuadas las personas que participen en reuniones de veinte (20) personas o menos en las que todos los presentes estén completamente vacunados y aquellas que lleven a cabo actos en las que el uso de la mascarilla sea incompatible o afecte su salud.

   b. Es requerida la mascarilla en espacios al aire libre, aunque la persona esté parcial o completamente vacunada, cuando haya una actividad concertada u organizada que implique aglomeración de cincuenta (50) o más personas. Se recomienda su utilización en lugares turísticos en

los que también haya una aglomeración de visitantes.

c.      Empleados en los hospitales y centros que brinden servicios de salud deberán utilizar las mascarillas KN-95 o N-95.

**d.      El Departamento de Salud podrá exigir la utilización de mascarillas en otros escenarios en los que determine adecuado para evitar futuros contagios.**

**e.      Se entiende por "mascarilla" cualquier producto de tela u otro material que cubre la boca, la nariz y la barbilla, provisto de un arnés de cabeza que puede rodear la cabeza o sujetarse a las orejas. Lo anterior, según las recomendaciones y especificaciones del Departamento de Salud y los CDC.**

2.      Mantener un espacio mínimo de seis (6) pies entre sí y las demás personas fuera de su unidad familiar, evitando cualquier aglomeración.

3.      Lavar sus manos con agua y jabón regularmente, o con desinfectantes de manos aprobados por entidades oficiales de salud.

Asimismo, en la Sección décima (10ª) de la aludida Orden

Ejecutiva se dispuso que:

**REQUERIMIENTO A VISITANTES. En aras de lograr salvaguardar la salud de toda la población en Puerto Rico y minimizar los contagios, ordeno que a partir de la vigencia de esta Orden Ejecutiva todos los restaurantes (incluyendo los "fast foods", "food courts" y cafeterías), barras, chinchorros, cafetines, "sport bars", teatros, cines, coliseos, centros de convenciones y de actividades, y cualquier otro local que expenda bebida o comida preparada, hoteles, paradores, hospederías, salones de belleza, barberías, salones de estética, spa, gimnasios y casinos, deberán verificar que todos sus visitantes - sujeto a las excepciones dispuestas en esta sección- cumplan con una de las siguientes condiciones:**

**1.      que el visitante presente evidencia de que está debidamente inoculado con una vacuna autorizada por la FDA para atender la emergencia del COVID-19 o cualesquiera otras incluidas en la lista de uso de emergencia de la WHO;**

**2.      que el visitante presente un resultado negativo de COVID-19 proveniente de una prueba viral cualificada SARS-CoV-2 (pruebas de amplificación del ácido nucleico ("NAA T") o pruebas de antígeno) realizada dentro de un término máximo de 72 horas antes de la visita y que haya sido procesada por un profesional de la salud autorizado, previo a acceder al comercio, o**

**3.   que el visitante presente un resultado positivo a COVID-19 de los pasados 3 meses, junto con documentación de su recuperación, incluyendo una carta de un proveedor de salud certificado o de algún oficial gubernamental de salud que certifique que la persona está recuperada y lista para comparecer a lugares públicos.**

**Será responsabilidad de cada negocio o entidad comercial solicitar a cada visitante aplicable -antes de que entre al comercio- que presente el certificado de inmunización ("COVID-19 Vaccination Record Card' o "Vacu ID"), el resultado negativo de la prueba viral o el resultado positivo a COVID-19 de los pasados tres (3) meses, junto con documentación de su recuperación. Por su parte, será responsabilidad del visitante presentar su certificado de inmunización ("COVID-19 Vaccination Record Card' o "Vacu ID"), el resultado negativo de la prueba viral o el resultado positivo a COVID-19 de los pasados tres (3) meses, junto con documentación de su recuperación, como condición para poder acceder al comercio.** El certificado de inmunización o la prueba viral podrá ser presentada por cualquier otro método físico o digital. **Es importante señalar que lo dispuesto en esta Orden Ejecutiva no limita la facultad de cualquier operador privado de implementar restricciones adicionales a las aquí dispuestas. Es decir, nada de lo dispuesto en esta Orden Ejecutiva debe interpretarse como que los operadores privados no pueden tomar medidas adicionales o más restrictivas, incluyendo, pero no limitándose a cualquier restricción** voluntaria de su horario de operaciones, autolimitación de espacio o cantidad de personas que pueden permanecer en su interior. (*Énfasis nuestro*).

Quedan exceptuados de cumplir con el cernimiento dispuesto en esta sección todos los menores de cinco (5) años, quienes por ahora no pueden ser vacunados. En cambio, las disposiciones de esta sección le serán aplicables a los niños de cinco (5) años a once (11) años -ya que están en proceso de vacunación- luego del 31 de enero de 2022.

Asimismo, en el caso de los restaurantes (incluyendo los "fast foods", "food courts" y cafeterías), barras, chinchorros, cafetines y "sport bars", están exceptuadas de esta Sección todas las personas que única y exclusivamente adquieran alimentos en modo de entrega ("de/iver/'), servicarro o recogido ("curbside pickup" o "pickup"); es decir, que no consumirán alimentos dentro del establecimiento comercial. **Cualquier visitante que se niegue a cumplir con los requerimientos dispuestos en esta Orden Ejecutiva, según implementados por el operador privado, no podrá acceder al local.** De ser la persona un huésped de un hotel, parador o hospedería, incluyendo los alquileres a corto plazo, éste no podrá acudir ni pernoctar en el referido lugar hasta tanto y en cuanto

cumpla con las disposiciones de esta Orden Ejecutiva. Se insta a todos los ciudadanos a cooperar con los operadores privados para el cumplimiento con lo aquí dispuesto. **De cualquier ciudadano no cooperar y tratar de forzar a algún operador privado a incumplir con las disposiciones de esta Orden Ejecutiva, podrá estar sujeto a lo dispuesto en la Sección 14ª de esta Orden y a cualquier otra disposición del Código Penal de Puerto Rico aplicable. Cualquier restaurante (incluyendo los "fast foods", "food courts" y cafeterías), barra, chinchorro, cafetín, "sport bars", teatro, cine, coliseo, centro de convenciones y de actividades, y cualquier otro local que expenda bebida o comida preparada, además de cualquier salón de belleza, barbería, salón de estética, spa, gimnasio o casino que no cumpla con los requerimientos dispuestos anteriormente, estará obligado a limitar su aforo a una capacidad máxima del 50% del local, según el código de edificación vigente en Puerto Rico (PR Building Code 2018).** (*Énfasis nuestro*).

FISCALIZACIÓN. Se ordena que las agencias concernientes fiscalicen el fiel cumplimiento de lo establecido en esta Orden Ejecutiva. A su vez, se insta al público a informar a las autoridades pertinentes de entidades que incumplan con lo aquí dispuesto. Con el propósito de que los ciudadanos puedan contribuir a la fiscalización y al cabal cumplimiento con esta Orden Ejecutiva, se ordena que cada comercio o establecimiento tenga afiches en lugares visibles notificando la línea confidencial para el COVID-19 creada por el Departamento de Salud. El afiche o anuncio debe informar si el lugar realiza cernimiento de vacunación o de prueba negativa en su entrada. Este afiche o letrero deberá contener la siguiente información de contacto para que los ciudadanos puedan reportar incumplimientos: a) Teléfono: (787) 522-6300, extensiones 6899, 6840, 6824, 6833 y 6893 b) Correo electrónico: investigaciones@salud.pr.gov Se requiere, además, que de no realizarse el cernimiento aquí dispuesto, el afiche o letrero mencionado anteriormente deberá contener el número de personas que compone la ocupación máxima requerida de 50% de la capacidad del lugar, según el código de edificación vigente en Puerto Rico (PR Building Code 2018) y autorizado por el Negociado del Cuerpo de Bomberos de Puerto Rico, lo anterior, so pena de incumplimiento con esta Orden Ejecutiva. Se insta a que los ciudadanos notifiquen a las agencias concernientes, incluyendo al Departamento de Salud, de cualquier operador privado que no esté cumpliendo con el cernimiento o con la limitación del 50% de capacidad del lugar, según dispuesto en esta Orden Ejecutiva.

En la sección décimo cuarta (14ª) de la referida Orden

Ejecutiva, el Primer Mandatario estableció que, por el

incumplimiento con lo ordenado, se estaría sujeto a siguientes las penalidades:

> INCUMPLIMIENTO. Ante el incumplimiento con las disposiciones contenidas en esta Orden Ejecutiva por cualquier persona y/o empresa, se implementarán las sanciones penales y aquellas multas establecidas por el Artículo 5.14 de la Ley Núm. 20-2017, según enmendada, la cual establece pena de reclusión que no excederá de seis (6) meses o multa que no excederá de cinco mil ($5,000) dólares o ambas penas a discreción del tribunal y de cualquier ley aplicable. De igual forma, conforme a las disposiciones del inciso (a) del Art. 33 de la Ley orgánica del Departamento de Salud, "[t]oda persona natural o jurídica que infrinja las disposiciones de esta ley o de los reglamentos dictados por el Departamento de Salud al amparo de los mismos incurrirá en delito menos grave y sentenciado que podrá ser sancionada con pena de reclusión que no excederá de seis (6) meses o multa no mayor de cinco mil dólares ($5,000) o ambas penas a discreción del tribunal". De otra parte, el inciso (b) de este artículo dispone que "[t]oda persona natural o jurídica que infrinja por primera vez las disposiciones de esta ley o de los reglamentos dictados por el Departamento de Salud al amparo de la misma, será responsable de una multa administrativa no mayor de cinco mil (5,000) dólares, según las disposiciones de la [Ley Núm. 38-2017, "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"]; en el caso de incurrir nuevamente en violación a esta ley o los reglamentos dictados por el Departamento en virtud de la misma en un período de tiempo de un (1) año, la multa impuesta podrá ser aumentada hasta un máximo de diez mil (10,000) dólares". De incumplir con las disposiciones de esta Orden, la persona estará sujeta a enfrentar un proceso penal, el cual deberá ser iniciado sin dilación alguna por el Ministerio Público, quien, a su vez, deberá solicitar fijación de fianza, según lo establecen las Reglas de Procedimiento Criminal.

Por otro lado, a parte de lo dispuesto por la Orden Ejecutiva OE-2021-075, nuestro ordenamiento jurídico en materia de daños y perjuicios le exige al dueño de un establecimiento comercial abierto al público mantenerlo en condiciones de seguridad tales que las personas inducidas a penetrar en el mismo no sufran ningún daño.[2] El incumplimiento de este deber por parte del propietario o sus empleados es fuente de responsabilidad extracontractual.[3] Dicha obligación implica que el dueño u operador tiene el deber de ejercer

---

[2] *Sociedad v. González Padín*, supra.
[3] *Colón v. Kmart*, supra; *J.A.D.M v. Centro Comercial Plaza Carolina*, supra.

un cuidado razonable para mantener la seguridad de las áreas accesibles al público o cliente para que de ese modo se evite que sus clientes sufran de algún daño. *Sociedad v. González Padín, a la pág. 104; Colón v. Kmart* y otros, *supra.*

En el presente caso, la parte apelada simple y sencillamente, estaba dando estricto cumplimiento a la precitada Orden Ejecutiva OE-2021-075, la cual proscribía que las personas entraran a lugares dedicadas al estipendio de comida, incluidos los restaurantes como el suyo, sin el uso de mascarillas. En resumen, estaba en el pleno ejercicio y cumplimiento de su deber legal. En vista de lo anterior, no incidió el foro a quo, al no imponerle responsabilidad a la parte apelada bajo el Artículo 1536 de nuestro Código Civil, *supra.*

En su segundo señalamiento de error, arguye la parte apelante que erró el foro primario al imponerle la suma de $2,000.00 por concepto de honorarios de abogado. No nos persuade.

A la luz de nuestro ordenamiento jurídico y particularmente, del estado de derecho vigente en el contexto de la Pandemia del Covid-19 que azotó a nuestro territorio y que, a su vez, puso en jaque a la población a nivel mundial, las actuaciones de la parte apelante no tuvieron el mínimo indicio de prudencia y sensatez. Ante una situación que constituía una amenaza a la vida y la seguridad de las personas, el bien común prevalece sobre cualquier interés personal como el que tenía el apelante de acudir al restaurante de la parte apelada, ello, en claro menosprecio de la seguridad de las demás personas. No conforme con ello, interpuso una *Demanda*, a todas luces, frívola, ocupando los recursos del Poder Judicial inmerecida e injustificadamente.[4] Consecuentemente, no incidió el foro

---

[4] Al momento de instar su reclamación sobre daños y perjuicios (*Demanda*) en diciembre de 2022, ya existía una *Orden de Protección al Amparo de la Ley Contra el Acecho en Puerto Rico* expedida desde febrero de 2022 a favor del señor Henríquez González.

primario al imponerle los honorarios de abogado impugnados a la parte apelante.

**VI**

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada que desestimó la *Demanda* con perjuicio, así como la imposición de honorarios de abogado a la parte apelante.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones